UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| FERDINANDO G., | : | |
| | : | |
| Petitioner, | : | Civ. No. 18-11359 (KM) |
| | : | |
| v. | : | |
| | : | |
| JEFFERSON B. SESSIONS III, | : | **OPINION** |
| | : | |
| Respondent. | : | |
| | : | |

**KEVIN MCNULTY, U.S.D.J.**

**I.     INTRODUCTION**

Petitioner, Ferdinando G.,[1] is proceeding through counsel with an amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (DE 6-2.) Petitioner seeks to have his extradition to Italy denied, and to have this Court stay his extradition pending resolution of his petition by this Court and, if necessary, the United States Court of Appeals for the Third Circuit. Respondent opposes the amended petition. (DE 9.) For the following reasons, the amended petition and Petitioner's request for a stay will both be denied.

**II.    BACKGROUND**

Petitioner is a native and citizen of Italy. (DE 1-1 at 3.) He arrived in the United States without authorization on or about January 28, 2016. (DE 6-2 at 13.) He was detained by Immigrations and Customs Enforcement ("ICE") on November 28, 2016 and served with a Notice to Appear. (DE 1-1 at 3.) The Notice to Appear charged him with removability under section

---

[1] Consistent with guidance regarding privacy concerns in social security and immigration cases by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, Petitioner is identified herein only by his first name and last initial.

212(a)(6)(A)(i) of the Immigration and Nationality Act, on the basis of his being "an alien present in the U.S. without having been admitted or paroled." (*Id.*) During his immigration proceedings, Petitioner applied for asylum and deferral of his removal under the Convention Against Torture ("CAT"). (DE 6-2 at 13.) He asserted that he would be tortured upon his return to Italy. (*Id.*) Petitioner had previously been in an Italian prison known as 41-*bis* for six years on "charges of extortion and mafia association." (DE 1-29 at 2.) Upon his release from prison, he was subject to a six-year term of "special surveillance," which required him, in part, to reside in his home village of Carini. (*Id.* at 2–3.) However, he fled Italy in 2016 and entered the United States. (*Id.* at 3.) Petitioner alleges that the 41-*bis* is "a notorious prison for criminal defendants suspected of membership in organized crime" and that, if sent back to Italy, he would be returned to 41-*bis* and subject to torture in the form of inhumane conditions of confinement at that prison. (DE 6-2 at 13.)

The Immigration Judge ("IJ") initially granted Petitioner's application for asylum based upon the United States' obligations under the CAT, but that decision was later vacated by the Board of Immigration Appeals ("BIA"). (*Id.* at 14–16; *see also* DE 1-1; DE 1-2.) Petitioner filed an appeal of the BIA's decision to the United States Court of Appeals for the Second Circuit on December 19, 2017 and the matter remains pending. *See Gallina v. Rosen*, No. 17-4058, ECF No. 1 (2d Cir. Dec. 19, 2017).

On June 23, 2017, at the request of the Government of the Republic of Italy, the United States instituted extradition proceedings against Petitioner. (DE 1-32.) Petitioner is accused of having committed three premeditated murders in Italy between 1999 and 2000. (DE 1-29 at 2.) He is alleged to have committed those murders as a member of La Cosa Nostra, the Sicilian organized crime entity. (*Id.*) On May 21, 2018, in the District of New Jersey, an extradition hearing was conducted before a Magistrate Judge. (*Id.*) After considering the submissions of the parties and the

evidence offered at the hearing, the Magistrate Judge found that there was probable cause to believe Petitioner committed the three murders and that the other elements required to certify Petitioner's extradition had been met. (*See generally* DE 1-29.) The Magistrate Judge expressly declined to consider Petitioner's argument that his extradition would violate the CAT, holding that the rule of non-inquiry barred the court's review of such humanitarian considerations. (*Id.* at 11–13.) On July 9, 2018, the Magistrate Judge formally certified Petitioner's extradition to the Secretary of State. (DE 9 at 16.)

On July 3, 2018, Petitioner filed in this Court a petition for a writ of habeas corpus under 28 U.S.C. § 2241. (DE 1.) The petition asserts that his extradition should be denied because his return to Italy and the 41-*bis* prison would violate the CAT. (*Id.* at 30.) He also requests that the Court stay his extradition pending a decision on his § 2241 petition and any subsequent appeal to the Third Circuit. (*Id.* at 26.) I once dismissed the petition without prejudice for lack of jurisdiction, finding it was not ripe for review because the Secretary of State had not issued an extradition decision. (DE 3; DE 4.) On August 31, 2018, the United States Department of State did issue Petitioner a letter stating that the Deputy Secretary of State had authorized his surrender to Italy. (DE 6-1.) Thereafter, Petitioner moved to reopen this proceeding and filed an amended petition asserting the same two claims he had raised in his initial petition. (DE 6-2.) Respondent filed a brief in opposition and Petitioner submitted a reply. (DE 9; DE 16.) The matter is now ripe for disposition.

### III. DISCUSSION

#### A. Petitioner's CAT Claim

Petitioner contends that his extradition should be denied because returning him to Italy and 41-*bis* detention would violate the CAT. (DE 6-2 at 30.) He submits that his claim is reviewable

under § 2241 and the Administrative Procedures Act ("APA"), and maintains that the rule of non-inquiry does not bar consideration of his claim. (*Id.* at 38.) He requests that this Court deny Italy's request for his extradition. (*Id.* at 61.) Respondent asserts, however, that the Secretary of State's decision to extradite an individual is not subject to judicial review. (DE 9 at 18.) Respondent emphasizes that the statutory framework for the extradition process, the rule of non-inquiry, and the regulations implementing the CAT all make clear that the Secretary of State's decision is not judicially reviewable. (*Id.*)

Petitioner's claim presents an interplay of case law, statutes, a treaty, and the role of the judiciary. The issue of judicial reviewability has given rise to a split of authority among the Courts of Appeals, although not one which, in the end, affects the result here. Before addressing the merits of Petitioner's CAT claim, I will provide some pertinent legal background.

> i. *The Extradition Process and the Rule of Non-Inquiry*

"Extradition is a process by which a fugitive may be returned to another country to face criminal charges." *Mironescu v. Costner*, 480 F.3d 664, 665 (4th Cir. 2007). When a foreign government seeks to extradite an individual, it will submit an extradition request to the United States Department of State. *Id.*; *see also Restatement (Third) of Foreign Relations Law* § 478 cmt. a (1987). If the request is deemed valid, it is referred to the United States Attorney in the district where the individual is located. *Mironescu*, 480 F.3d at 665; *see also Restatement (Third) of Foreign Relations Law* § 478 cmt. a (1987). The United States Attorney then files a complaint in the appropriate district court, "seeking certification of the individual's extraditability and a warrant for their arrest." *Mironescu*, 480 F.3d at 665; *see also* 18 U.S.C. § 3184. The court then conducts a "limited" hearing, during which it can inquire only as to whether an individual is "subject to surrender to the requesting government, a determination that requires a finding as to whether

4

probable cause supports the charges against the [individual]." *Hoxha v. Levi*, 465 F.3d 554, 560 (3d Cir. 2006) (citing *Sidali v. INS,* 107 F.3d 191, 194 (3d Cir.1997)). If the court finds that the individual is subject to surrender, the court certifies to the United States Secretary of State that the individual is extraditable. *Id.*; *see also* 18 U.S.C. § 3184. The Secretary of State then decides whether to actually extradite that individual. *Mironescu*, 480 F.3d at 665. In making that extradition determination, "the Secretary of State 'exercises broad discretion and may properly consider factors affecting both the individual defendant as well as foreign relations' in deciding whether extradition is appropriate." *Hoxha*, 465 F.3d at 563 (quoting *Sidali,* 107 F.3d at 195 n.7).

Once the Secretary has determined that the person should be extradited, that person "may obtain limited collateral review of the certification in the form of a petition for a writ of habeas corpus." *Mironescu*, 480 F.3d at 665; *see also Hoxha*, 465 F.3d at 560*.* The scope of this habeas review is generally limited by the doctrine of "non-inquiry." As relevant here, the doctrine entails that humanitarian considerations, such as CAT claims, "are within the purview of the executive branch and generally should not be addressed by the courts in deciding whether a petitioner is extraditable." *Hoxha*, 465 F.3d at 563; *see also Sidali,* 107 F.3d at 195 n.7 ("[W]e note that it is the function of the Secretary of State—not the courts—to determine whether extradition should be denied on humanitarian grounds."). Thus, under the rule of non-inquiry, "courts refrain from investigating the fairness of a requesting nation's justice system, and from inquiring into the procedures or treatment which await a surrendered fugitive in the requesting country." *Hoxha*, 465 F.3d at 563 (internal quotation marks omitted) (quoting *United States v. Kin-Hong*, 110 F.3d 103, 110 (1st Cir. 1997). The purpose of this rule is to serve "interests of international comity by relegating to political actors the sensitive foreign policy judgments that are often involved in the question of whether to refuse an extradition request." *Id.*

*ii.* *The Administrative Procedures Act*

The APA provides that court review is available as to "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. §704; *see Hoxha*, 465 F.3d at 564. Section 701(a)(1) of the APA states that review of an agency decision is not available, however, if "statutes preclude judicial review." 5 U.S.C. § 701(a)(1). And section 701(a)(2) expressly excepts from judicial review "agency action . . . committed to agency discretion by law." 5 U.S.C. § 701(a)(2).

*iii.* *The CAT, the FARR Act, and the REAL ID Act*

The United Nations General Assembly adopted the CAT in 1984. *Auguste v. Ridge*, 395 F.3d 123, 130 (3d Cir. 2005). Article 3 of the CAT provides that no party shall "extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture." 1465 U.N.T.S. 114. The United States signed onto the Convention in 1988. *Id.* However, the CAT was not self-executing and "therefore does not in itself create judicially enforceable rights." *Hoxha*, 465 F.3d at 564 n.15 (citing *Auguste*, 395 F.3d 132 & n.7). To implement CAT, Congress enacted the Foreign Affairs Reform and Restructuring Act ("FARR Act") of 1988, Pub.L. No. 105–277, Div. G., § 2242, 112 Stat. 2681, 2681–822 (codified as note to 8 U.S.C. § 1231). The FARR Act provides as follows:

> It shall be the policy of the United States not to expel, extradite, or otherwise effect the involuntary return of any person to a country in which there are substantial grounds for believing the person would be in danger of being subjected to torture, regardless of whether the person is physically present in the United States.

FARR Act § 2242(a). FARR also required the heads of "appropriate agencies" to "prescribe regulations to implement the obligations of the United States under Article 3 [of the CAT]." *Id.* at § 2242(b). In the context of this case, the relevant agency head is the Secretary of State. *Hoxha*,

465 F.3d at 564. Additionally, § 2242(d) of the FARR Act limits court jurisdiction in certain respects:

> [N]othing in this section shall be construed as providing any court jurisdiction to consider or review claims raised under the [Torture] Convention or this section, or any other determination made with respect to the application of the policy set forth in subsection (a), *except as part of the review of a final order of removal* pursuant to section 242 of the Immigration and Nationality Act....

FARR Act § 2242(d) (emphasis added).

The upshot of the quoted sections of FARR is that non-citizens clearly may raise CAT claims in the context of immigration proceedings and relief from deportation. It is unclear, however, whether they may also do so in court, in the context of a habeas petition. Generally, of course, a district court may exercise jurisdiction over a habeas petition under 28 U.S.C. § 2241 when the petitioner is in custody and alleges that this custody violates the constitution, laws, or treaties of the United States. 28 U.S.C. § 2241(c); *Maleng v. Cook*, 490 U.S. 488, 490 (1989). The Courts of Appeals have split, however, as to whether the courts have been stripped of habeas jurisdiction over CAT claims.

Before the REAL ID Act was enacted in 2005, the Courts of Appeals which considered the issue held that the FARR Act did *not* remove habeas jurisdiction over CAT claims. *See* Stephen I. Vladeck, *Habeas Corpus, Due Process, and Extradition*, 98 Cornell L. Rev. Online 20, 27 (2013). However, the passage of the REAL ID Act in 2005 "complicated" the analysis, in that "its plain text appeared to foreclose habeas review of CAT claims." *Id.* Under the section of the REAL ID Act, titled "Claims Under the United Nations Convention," the Act provides as follows:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, United States Code, or any other habeas corpus provision . . . a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of any

7

> cause or claim under the United Nations Convention Against Torture and Other Forms of Cruel, Inhuman, or Degrading Treatment or Punishment, except as provided in subsection (e).

8 U.S.C. § 1252(a)(4); *see also* REAL ID ACT of 2005, Pub. L. 109-13, Div. B, § 106(a)(4), May 11, 2005, 119 Stat. 310-11. In the wake of the REAL ID Act, then, circuit courts have disagreed as to whether an individual facing extradition may raise a CAT challenge in a habeas petition.

                iv.      *Circuit Court Split over Jurisdictional Issue*

                    a.        *Fourth Circuit and D.C. Circuit Decisions*

Both the Fourth Circuit and D.C. Circuit Courts of Appeals have held that the FARR Act and the REAL ID Act strip habeas courts of jurisdiction over CAT claims.

In the Fourth Circuit case, *Mironescu*, *supra*, the petitioner filed a § 2241 habeas petition in district court, arguing that his extradition to Romania would violate his rights under the CAT because he would be tortured upon his return. 480 F.3d at 667. The Government argued that review of that claim was barred for two reasons: lack of habeas jurisdiction and the rule of non-inquiry. *Id.* at 668. The Fourth Circuit held that the rule of non-inquiry did not prevent the district court from hearing the petitioner's claims "in light of the Secretary [of State]'s conceded obligation under the FARR Act not to extradite [the petitioner] if he is likely to face torture." *Id.* at 673. However, the Fourth Circuit ultimately held that § 2242(d) of the FARR Act barred consideration of the petitioner's CAT claim. *Id.* The language of the FARR Act, it held, "plainly conveys that although courts may consider or review a CAT or FARR Act claim[ ] as part of their final order of removal, they are otherwise precluded from considering or reviewing such claims." *Mironescu*, 480 F.3d at 674.

In *Omar v. v. McHugh*, 646 F.3d 13 (D.C. Cir. 2011), the United States Court of Appeals for the D.C. Circuit held similarly. The D.C. Circuit found that the FARR Act simply "does not

8

give extradition or military transferees . . . a right to judicial review of conditions in the receiving country." *Id.* at 17. The Court reasoned in the alternative that, even if the FARR Act *had* once extended the right to judicial review of CAT claims, the REAL ID Act of 2005 took it away. The REAL ID Act, the court held, stripped district courts of jurisdiction and funneled such claims to petitions for review from final orders of removal. *Id.* at 18. "The REAL ID Act thus confirms that [the petitioner] possesses no statutory right to judicial review of conditions in the receiving country." *Id.*

The D.C. Circuit relied in part on Supreme Court dictum concerning the FARR Act in *Munaf v. Geren*, 553 U.S. 674 (2008). *Omar*, 646 F.3d at 16–17. In *Munaf*, the Supreme Court declined to address a petitioner's argument that he had no right under the FARR Act to "judicial review of conditions in the receiving county," because he had not raised the argument in his initial habeas petition. *Id.*; *see also Munaf*, 553 U.S. at 703. In a footnote, however, the Supreme Court "expressed doubt that [the petitioner] would have a claim under [the FARR] Act." *Omar*, 646 F.3d at 17. Specifically, the Supreme Court stated that "claims under the FARR Act may be limited to certain immigration proceedings." *Munaf*, 553 U.S. at 703 n.6. The Supreme Court then recited the section of the FARR Act which provides that CAT claims are reviewable only as part of a final order of removal. *Id.*

b. Ninth Circuit

The Ninth Circuit, however, has taken a different approach to the CAT claims in habeas petitions where the petitioner is subject to extradition. *See Trinidad y Garcia v. Thomas*, 683 F.3d 952 (9th Cir. 2012), *cert. denied*, 568 U.S. 1114 (2013). In 2012, the Ninth Circuit issued an en banc, per curiam decision in *Trinidad*, thereby creating the Circuit split to which I have referred.

9

In *Trinidad*, the petitioner argued that "his extradition to the Philippines would violate his rights under the Convention Against Torture (CAT) and the Fifth Amendment's Due Process Clause." *Id.* at 956 (footnote omitted). In contrast to the Fourth and D.C. Circuit courts, the Ninth Circuit held that neither the FARR Act nor the REAL ID Act removed habeas jurisdiction over a petitioner's CAT claim. The Ninth Circuit reasoned that "[a] statute must contain 'a particularly clear statement' before it can be construed as intended to repeal habeas jurisdiction." *Id.* at 956 (quoting *Demore v. Kim*, 538 U.S. 510, 517 (2003)). Moreover, "[e]ven if a sufficiently clear statement exists, courts must determine whether 'an alternative interpretation of the statute is fairly possible' before concluding that the law actually repealed habeas relief." *Id.* (quoting *INS v. St. Cyr*, 533 U.S. 289, 299–300 (2001)). The FARR Act, the court held, "lack[ed] sufficient clarity to survive the 'particularly clear statement' requirement" because it did not expressly repeal habeas jurisdiction. *Id.* As for the REAL ID Act, the Ninth Circuit determined that it could be "construed as being confined to addressing final orders of removal, without affecting habeas jurisdiction," and thus should not be regarded as having clearly repealed habeas relief. *Id.*

Having held that habeas relief remained available for extradition cases involving CAT claims, the Ninth Circuit laid out the appropriate scope of review, which was narrow:

> The process due here is that prescribed by the statute and implementing regulation: The Secretary must consider an extraditee's torture claim and find it not "more likely than not" that the extraditee will face torture before extradition can occur. 22 C.F.R. § 95.2. An extraditee thus possesses a narrow liberty interest: that the Secretary comply with her statutory and regulatory obligations.

*Id.* at 957. Once the Secretary of State has made a determination as to an individual's torture claim, and established that the Secretary's procedural obligations have been discharged, that is the end of the habeas court's judicial review. *Id.* Thus, "habeas in extradition cases extends only to ensure

10

that the detainee receives the process to which he is due, i.e., that the Secretary complied with her procedural obligations." Vladeck, *supra,* at 24.

The Ninth Circuit ultimately found that the Secretary had failed to provide evidence that she had actually complied with those procedural requirements. 683 F.3d at 957. Rather, "[t]he State Department ha[d] submitted a generic declaration outlining the basics of how extradition operates at the Department and acknowledging the Department's obligations under the aforementioned treaty, statute and regulations, but the Department [gave] no indication that it actually complied with those obligations in this case." *Id.* Accordingly, the Ninth Circuit remanded the matter to the district court "so that the Secretary of State may augment the record by providing a declaration that she has complied with her obligations." *Id.* The Ninth Circuit emphasized that once the Secretary of State had filed such a declaration of compliance, "the court's inquiry shall have reached its end"; "[t]he doctrine of separation of powers and the rule of non-inquiry block any inquiry into the substance of the Secretary's declaration." *Id.* Notably, this holding impliedly forecloses any APA challenge to the Secretary's decision. Indeed, the Ninth Circuit, sitting en banc, went on to add, "[t]o the extent that we have previously implied greater judicial review of the substance of the Secretary's extradition decision other than compliance with her obligations under domestic law, *e.g., Cornejo–Barreto v. Seifert,* 218 F.3d 1004, 1012 (9th Cir. 2000), we overrule that precedent." *Trinidad*, 683 F.3d at 957.[2]

---

[2] That overruled decision in *Cornejo-Barreto* stated only that "[a]n extraditee ordered extradited by the Secretary of State who fears torture upon surrender . . . *may* state a claim cognizable under the APA that the Secretary of State has breached her duty, imposed by the FARR Act, to implement Article 3 of the Torture Convention." *Cornejo-Barreto v. Seifert*, 218 F.3d 1004, 1016–17 (9th Cir. 2000) (emphasis added), *disapproved in later appeal sub nom. Cornejo-Barreto v. Siefert*, 379 F.3d 1075 (9th Cir. 2004), *opinion vacated on reh'g sub nom. Cornejo-Barretto v. Siefert*, 389 F.3d 1307 (9th Cir. 2004), and *overruled by Trinidad y Garcia v. Thomas*, 683 F.3d 952 (9th Cir. 2012).

11

In short, the Ninth Circuit in *Trinidad* required that the Secretary submit a declaration of compliance with procedural obligations under the CAT and FARR Act, but seems to have disapproved of any further challenge to the Secretary's decision to extradite an individual.

### c.     *Third Circuit*

The Third Circuit has not yet squarely confronted the issue of whether habeas courts have jurisdiction over CAT claims brought by individuals facing extradition. The Third Circuit has held, however, that the rule of non-inquiry precludes judicial review of a petitioner's humanitarian challenges to extradition.

In *Hoxha*, the petitioner challenged his underlying extradition proceedings, arguing that he would be tortured and perhaps killed by the authorities if extradited to Albania. *Hoxha*, 465 F.3d at 563. The district court declined to consider the petitioner's humanitarian claim in the "context of the extraditability analysis." *Id*. On appeal, the Third Circuit affirmed that decision. *Id.* at 563–64. Under the rule of non-inquiry, it reasoned, "such humanitarian considerations are within the purview of the executive branch and generally should not be addressed by the courts in deciding whether a petitioner is extraditable." *Id.* at 563. Accordingly, the Third Circuit held that "[u]nder the principle of non-inquiry, and in view of the evidence before it, the District Court correctly declined to consider the issue Petitioner's humanitarian claims." *Id.* at 563–64.

The petitioner alternatively argued that his humanitarian arguments were "relevant" under § 2242 of the FARR Act and the APA. *Id.* at 564–65. However, the Third Circuit held that the petitioner's claim was not ripe under the APA because the Secretary of State had not yet made a determination as to whether petitioner was extraditable, and therefore declined to consider the issue. *Id.* at 565.[3]

---

3       In a separate case dealing with the rule of non-inquiry in the context of immigration removal, the Third Circuit stated that it had "expressly reserved the possibility that, even in the extradition context, the

12

> *iv.    Analysis*

Perhaps anticlimactically, I find that the Circuit split has no consequences for this case. Whether under the approach outlined by the Fourth and D.C. Circuit courts, or the one outlined by the Ninth Circuit, Petitioner is not entitled to relief.

Under *Mironescu* and *Omar*, this Court lacks jurisdiction to hear Petitioner's CAT claims because review is precluded by the plain language of the FARR and REAL ID Acts. Both *Mironescu* and *Omar* held that these statutes funneled petitioner's CAT claims to petitions for review from final orders of removal. The stripping of all other forms of jurisdiction also precludes any APA claim by Petitioner, because review of an agency decision is not available if "statutes preclude judicial review." 5 U.S.C. § 701(a)(1); *see also Mironescu*, 480 F.3d at 677 n.15 ("The district court lacks the authority to review [the petitioner]'s claims under the APA for the same reason."); *Pena v. Daniels*, No. 13-708, 2015 WL 13730935, at *2 (E.D. Tex. Dec. 11, 2015) (finding petitioner's claim that he is entitled to judicial review of the Secretary's extradition decision under the APA "is without merit"); *Juarez-Saldana v. United States*, 700 F. Supp. 2d 953, 961 (W.D. Tenn. 2010) ("Since this Court has found that the FARR Act expressly prohibits judicial review of extradition decisions based on CAT claims, the APA cannot provide an alternative basis to circumvent this restriction.").

Under *Trinidad*, only one of those roadblocks is removed: This Court would possess jurisdiction over Petitioner's CAT claim. But the court's mandate is a limited one. The only question before the Court, however, would be whether the Secretary of State complied with procedural obligations under the CAT and the FARR Act. Those obligations include consideration

---

rule of non-inquiry would not apply if an alien raises a CAT claim." *Khouzam v. Attorney Gen. of U.S.*, 549 F.3d 235, 253 (3d Cir. 2008). The Third Circuit expressly recognized, however, that the Fourth Circuit in *Mironescu* "has held that it does not." *Id.*

13

of Petitioner's torture claim and a determination that Petitioner is *not* "more likely than not" to be tortured if extradited. *See Trinidad*, 683 F.3d at 957. Here, the evidence demonstrates that the Secretary of State has complied procedurally. Petitioner submitted with his amended petition the letter from the United States Department of State authorizing his extradition to Italy. (DE 6-1.) The letter reiterates the Secretary's obligations under the CAT and states that the Deputy Secretary of State has reviewed "all pertinent information, including the materials submitted directly to the Department of State and pleadings and filings submitted to the U.S. District Court for the District of New Jersey." (*Id.* at 12.) The letter states that after a review of these materials, the Department of State has determined that Petitioner's surrender to Italy "complies with the United States' obligations under the Convention [Against Torture] and its implementing statute and regulations." (*Id.* at 3.) The letter recites that the Deputy Secretary of State therefore authorizes Petitioner's surrender to Italy pursuant to the Extradition Treaty between the two countries. (*Id.* at 2.) Thus, it is clear that the Secretary gave Petitioner all the process he was due—review of Petitioner's materials alleging that he would face if returned to Italy—but ultimately determined that Petitioner's return would not violate the CAT or the FARR Act. That determination is a discretionary one, and that discretion is lodged with the Secretary of State, not the court.

Under *Trinidad*, this ends the Court's inquiry into Petitioner's CAT claim, as well as Petitioner's APA claim. "The doctrine of separation of powers and the rule of non-inquiry block any inquiry into the substance of the Secretary's declaration"; and "[t]o the extent that [the Ninth Circuit] previously implied greater judicial review of the substance of the Secretary's extradition decision other than compliance with her obligations under domestic law . . . we overrule that precedent." *Trinidad*, 683 F.3d at 957 (expressly overruling *Cornejo-Barreto,* which held that an APA challenge to the Secretary's extradition decision may be a viable claim).

Accordingly, I do not find that Petitioner's claims, whether reviewed under the standard set forth by the Ninth, Fourth, or D.C. Circuit, warrant habeas relief.[4]

B.   **Request for a Stay**

Petitioner requests that this Court issue a stay of his extradition pending the Court's decision on his §2241 petition, as well as any subsequent appeal to the Third Circuit. (DE 6-2 at 27.) Respondent asserts, however, that Petitioner has not met the burden required for the extraordinary remedy of a stay. (DE 9 at 36.)

A party requesting a stay bears the burden of demonstrating four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009) (quoting *Hilton v. Braunskill,* 481 U.S. 770, 776 (1987)).

As to the first factor, I find that Petitioner has not made a strong showing that he is likely to succeed on the merits. For all of the reasons discussed in detail above, I have found that

---

[4]   Petitioner raises for the first time, in his reply brief, an argument under the Suspension Clause of the U.S. Constitution. (*Compare* DE 6-2, *with* DE 16 at 27.) He argues that if the FARR Act or the REAL ID Act strip this Court of jurisdiction to hear his claims, the result would be a violation of the Suspension Clause. (DE 16 at 27.) Since this claim was not raised in his initial petition, and because the Government therefore did not have an opportunity to address it, I decline to consider it. *See Cobra Enterprises, LLC v. All Phase Servs., Inc.*, No. 20-4750, 2020 WL 2849892, at *1 (D.N.J. June 1, 2020) ("[T]his is a new argument raised in a reply brief and will not be considered. As a matter of procedure, this Court will not accept arguments offered for the first time in the reply brief, as they were not properly asserted in the opening brief and Plaintiffs have not had the opportunity to respond to them."; *see also Banner v. Fletcher*, --- F. App'x ---, No. 20-1580, 2020 WL 6502983, at *2 n.2 (3d Cir. Nov. 5, 2020) ("To the extent that [the plaintiff] makes new arguments in her reply brief that she could have raised in her opening brief, this Court will not 'reach arguments raised for the first time in a reply brief.'" (quoting *Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 146 (3d Cir. 2017)).

Petitioner is not entitled to habeas relief on his CAT claim. This factor therefore weighs against the granting of a stay.

As to whether Petitioner will suffer irreparable harm, Petitioner argues that if he is extradited prior to adjudication of his habeas petition, he would effectively be denied any remedy for his claim. (DE 6-2 at 28.) Petitioner is correct that, absent a stay, he may be extradited, and his case mooted. This is no different from "the harm facing every petitioner who lacks meritorious habeas corpus claims challenging an impending extradition." *Venckiene v. United States*, 929 F.3d 843, 864 (7th Cir. 2019), *cert. denied*, 140 S. Ct. 379 (2019). Unless extradition is wrongful, that does not constitute a cognizable injury.

Of greater concern, of course, is Petitioner's allegation that he will face irreparable harm in the form of torture if extradited. The Court, however, has not reviewed the likelihood of that occurring, and is not empowered to do so. That issue is reserved to the Secretary of State, who has done the necessary analysis and found that Petitioner is *not* "more likely than not" to be tortured if returned. It is not the province of this Court to supplant the Secretary's judgment, whether substantively or in the context of a stay application. *See Hoxha*, 465 F.3d at 563 (holding "humanitarian considerations like CAT claims are within the purview of the executive branch and generally should not be addressed by the courts in deciding whether a petitioner is extraditable"); *see also Sidali,* 107 F.3d at 195 n.7 ("[W]e note that it is the function of the Secretary of State—not the courts—to determine whether extradition should be denied on humanitarian grounds.").

The remaining two factors – the injury to the opposing party and the public interest – likewise weigh against Petitioner's request for a stay. Petitioner asserts that the Government would not suffer any prejudice as a result of the stay because he continues to remain in custody and is available for extradition if he receives an adverse decision. (DE 6-2 at 29.) He also contends that

the charges against him in Italy are "two decades old" and that additional time to permit him to challenge his extradition "would not prejudice the government or the Republic of Italy." (*Id.*) Moreover, Petitioner maintains that the public interest weighs in favor of a stay because the issue presented in his petition is unsettled in the Third Circuit and therefore, his case has importance not only for him, but also for "the Third Circuit generally." (*Id.*) Respondent rebuts these contentions, arguing that the United States has a heightened interest in returning Petitioner to Italy. (DE 9 at 39–40.) Respondent submits that protracted delays would interfere with the United States' ability to timely comply with its treaty obligations and could undermine its reciprocal interest in having other nations cooperate swiftly with its own extradition requests and law enforcement objectives. (*Id.* at 40.) Additionally, Respondent asserts that the case is a matter of considerable public interest in Italy and important to Italy's efforts to combat organized crime. (*Id.*)

I am persuaded by Respondent's arguments regarding the prejudice suffered and the greater public interest. The United States Supreme Court has recognized that "[t]he surrender of a fugitive, duly charged in the country from which he has fled with a nonpolitical offense and one generally recognized as criminal at the place of asylum, involves no impairment of any legitimate public or private interest." *Factor v. Laubenheimer*, 290 U.S. 276, 298 (1933). The U.S. Court of Appeals for the Seventh Circuit elaborates thus:

> For extradition treaties to operate successfully, each party must comply with their terms and be able to trust that the other party will do the same. Failure to comply with foreign nations' proper extradition requests threatens to erode the effective force of these treaties. If other countries lose confidence that the United States will abide by its treaties, the United States risks losing the ability to obtain the extraditions of people who commit crimes here and flee to other countries. It is within the public interest for this country to be able to try those who commit crimes here within our justice system. That requires the United States to maintain good faith with foreign nations.

*Venckiene*, 929 F.3d at 865. For these reasons, I find that the final two factors, like the first two, weigh against Petitioner's request for a stay.

Accordingly, after a review of the relevant factors, I find that Petitioner has not met his burden of establishing that he is entitled to a stay.

**v.     CONCLUSION**

For the foregoing reasons, the amended petition and Petitioner's request for a stay (ECF No. 6-2) will be denied. An appropriate order follows.


DATED: February 1, 2021                      /s/ Kevin McNulty

                                                            KEVIN MCNULTY
                                                            United States District Judge